**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, a a Division of the Rail Conference of the International Brotherhood of Teamsters,** | ) ) ) ) ) |
| **Petitioner,** | ) ) |
| **v.** | ) **CASE NO.** |
| **NORFOLK SOUTHERN RAILWAY COMPANY,** | ) ) ) ) |
| **Respondent,** | ) ) |
| **and** | ) ) |
| **UNITED TRANSPORTATION UNION,** | ) ) |
| **Rule 19(a)(2) Defendant.** | ) ) |

## COMPLAINT AND PETITION FOR REVIEW

1.     This is an action to review Award No. 1 of Public Law Board No. 7310 ("PLB 7310" or "the Board"), a special board of adjustment created pursuant to Section 3, Second of the Railway Labor Act ("RLA"), 45 U.S.C. § 153, Second.  A true and correct copy of the Award is attached to this petition as Exhibit A.

2.     Jurisdiction to entertain this petition and to grant the relief requested is conferred on this Court by Section 3, Second and Section 3, First (q) of the RLA, 45 U.S.C. §§ 153, Second and 153, First (q)), and by Sections 1331 and 1337 of the Judicial Code, 28 U.S.C. §§ 1331 and 1337.

3.     Venue is proper in this Court pursuant to Section 3, First (q) of the RLA, 45 U.S.C. § 153, First (q), because the respondent Carrier operates through, and the Petitioner maintains its headquarters in, this judicial district.

## PARTIES

4.     Petitioner Brotherhood of Locomotive Engineers and Trainmen, a Division of the Rail Conference of the International Brotherhood of Teamsters, ("BLET") is a national labor

organization and the duly authorized bargaining representative under the RLA for employees of the respondent in the craft or class of locomotive engineer.  BLET is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, First.

5.     Respondent Norfolk Southern Railway Company ("NS" or "the Carrier") is a company engaged in the transportation of freight by railroad in interstate commerce and the operation of rail equipment and facilities.  NS is a "carrier" within the meaning of Section 1, First of the RLA, 45 U.S.C. § 151, First.

6.     United Transportation Union ("UTU") is a national labor organization and the duly authorized bargaining representative under the RLA for employees of the respondent in the craft or class of conductors and trainmen.  UTU is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, First.  UTU is named as a defendant pursuant to Federal Rule of Civil Procedure 19(a)(2).

## FACTS

7.     BLET and NS are parties to various agreements governing the terms and conditions of employment for employees of NS who occupy the position of locomotive engineer. One of these agreements is the 1980 N&W BLET Schedule Agreement ("BLET Schedule Agreement").  UTU is not a party to the BLET Schedule Agreement or to any side letters to that agreement.

8.     One of the terms and conditions of employment of NS locomotive engineers that is addressed in the BLET Schedule Agreement is locomotive engineers' seniority.  Article 21 of the BLET Schedule Agreement, entitled "Promotion – Road and Yard," governs when NS employees establish seniority as locomotive engineers on seniority rosters in various geographic areas where NS operates.  Article 21 states, in pertinent part, that "promotion and the establishment of a date of seniority as engineer shall date from day of promotion."

9.     UTU and NS are parties to various agreements governing the terms and conditions of employment for employees of NS who occupy certain operating craft positions other than

-2-

locomotive engineer, including conductors. One of these agreements is a 1996 Agreement that addresses how conductors are selected to participate in locomotive engineer training. BLET is not a party to the 1996 UTU-NS Agreement and is not a party to any side letters to that agreement.

10.     On February 13, 2002, NS and BLET entered into a Side Letter Agreement altering the application of Article 21's seniority provision "on the Central Region Hub Network" of NS. Pursuant to the February 13, 2002, Side Letter Agreement, "employees on the Central Region Hub Network upon successful completion of the Locomotive Engineer Training Program will remain in the same relative order on the engineer's seniority roster as they appear on the order of selection list," rather than having their date of seniority as an engineer date from day of promotion, as otherwise would be required by Article 21. The February 13, 2002, Side Letter Agreement for the Central Region Hub Network applied "subsequent to the date of this understanding." UTU is not a party to this Side Letter Agreement between NS and BLET.

11.     On August 16, 2006, NS and BLET entered into a Side Letter Agreement altering the application of Article 21's seniority provision "on the Pocahontas District" of NS. Pursuant to the August 16, 2006, Side Letter Agreement, "employees on the Pocahontas District Brakeman's Seniority Roster upon successful completion of the Locomotive Engineer Training Program will remain in the same relative order on the engineer's seniority roster as they appear on the order of selection list," rather than having their date of seniority as an engineer date from day of promotion, as otherwise would be required by Article 21. The August 16, 2006, Side Letter Agreement for the Pocahontas District applied "subsequent to the date of this understanding." UTU is not a party to this Side Letter Agreement between NS and BLET.

12.     The NS locomotive engineers' seniority roster designated B-8 ("the B-8 Roster") applies to a single district on NS's Virginia Division covering the territory between Norfolk and Roanoke, Virginia.

13.     In March 2008, NS sought to enter into a Side Letter Agreement with BLET to

alter the application of BLET Schedule Agreement Article 21 to the establishment of seniority as a locomotive engineer on the B-8 Roster.  NS proposed that BLET agree "that trainmen who are currently in LET or are selected for LET subsequent to the date of this letter and thereafter establish engineer seniority within that seniority district will remain in the same relative order on the engineer's seniority roster as they appear on the Virginia Division trainmen's seniority rosters," rather than having their dates of seniority as engineers date from day of promotion, as otherwise would be required by Article 21.  BLET did not agree to the change NS had proposed to the application of the Article 21 requirement to the B-8 Roster.

14.    Section 3, First (i) of the RLA, 45 U.S.C. § 153, First (i), provides in relevant part:

> disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

15.    Section 3, Second of the RLA, 45 U.S.C. § 153, Second, provides in relevant part:

> If written request is made upon any individual carrier by the representative of any craft or class of employees of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board...or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board within thirty days from the date such request is made. The cases which may be considered by such Board shall be defined in the agreement establishing it . . . .

16.    PLB 7310 was created by NS and UTU pursuant to Section 3, Second of the RLA to decide disputes arising under the collective bargaining agreements between NS and UTU.

17.    One of the disputes that NS and UTU submitted to PLB 7310 for resolution was a claim filed by UTU on behalf of three NS locomotive engineers ("the claimants"), disputing the seniority dates they were given when they were promoted to locomotive engineers and their placement on the B-8 Roster.  This dispute was identified as Case No. 1 before PLB 7310.

-4-

18.     In Case No. 1, the claimants asserted that they were entitled to locomotive engineer seniority dates that were earlier than the dates they had been promoted to locomotive engineer and that they were entitled to be placed on the B-8 Roster ahead of those locomotive engineers who had been promoted to locomotive engineer positions before them. They claimed that they should have been assigned seniority dates as locomotive engineers that were the same as their trainmen seniority dates.

19.     In its Award No. 1, PLB 7310 disallowed one of the three claims because the employee on whose behalf it was submitted had resigned. The Board sustained the claims of the other two engineers and ordered that they be ranked on the B-8 Roster "according to their train service seniority," without regard to the dates on which they had actually been promoted to locomotive engineer.

20.     As a result of Award No. 1, NS placed those two employees higher on the B-8 Roster than locomotive engineers who already were working as locomotive engineers when the claimants were promoted to locomotive engineer and who had been given locomotive engineer seniority dates in accordance with the BLET Schedule Agreement.

21.     As a result of Award No. 1, NS also has placed eight other employees who were not claimants before PLB 7310 higher on the B-8 Roster than locomotive engineers in the Virginia Division who already were working as locomotive engineers when those eight individuals were promoted to locomotive engineer.

22.     As a result of the Award, NS has placed more senior locomotive engineers into lower relative seniority rankings on the B-8 Roster than they had prior to the Award.

23.     Lower ranking on the B-8 seniority roster reduces an employee's ability to bid for and obtain engineer jobs that he/she may deem preferable in terms of hours worked, type of runs, amount of pay to be earned and other circumstances. It also reduces the lower-ranked employees' job security as they suffer greater exposure to layoffs, which occur in reverse seniority order, and the loss of income and benefits associated with being laid off.

-5-

## COUNT I

24.     Awards of special boards of adjustment created pursuant to Section 3, Second of the Railway Labor Act, 45 U.S.C. § 153, Second, are subject to judicial review on the same basis as awards of the National Railroad Adjustment Board ("NRAB").

25.     Section 3, First (q) of the RLA, 45 U.S.C. § 153, First (q), provides that an employee or group of employees aggrieved by any of the terms of an award of the NRAB or by the failure of the NRAB to include certain terms in an award, may file a petition for review of the award in United States District Court.  In such a proceeding, Section 3, First (q) provides that

> the court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct.  On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

26.     Neither BLET nor NS has agreed to amend Article 21 of the BLET Schedule Agreement to allow newly-promoted locomotive engineers to acquire seniority dates as locomotive engineers on the B-8 Roster that are other than the dates the employees are promoted to locomotive engineer status.

27.     PLB 7310 was without authority to change or otherwise add any terms to the agreements between BLET and NS.

28.     In its Award No. 1, PLB 7310 impermissibly changed Article 21 of the BLET Schedule Agreement by assigning newly-promoted engineers on the Virginia Division seniority dates as locomotive engineers on the B-8 Roster that are the same as their trainmen seniority dates, rather than the dates on which they were promoted to locomotive engineer status.

29.     Award No. 1 of PLB 7310 fails to conform or confine itself to matters within PLB 7310's jurisdiction.  It should therefore be set aside.

## RELIEF REQUESTED

Wherefore, petitioner BLET prays that this Court:

(A)     Enter judgment and order in favor of the petitioner, setting aside Award No. 1 of Public Law Board 7310; and

(B)     Order such further relief as the Court deems just and proper in the circumstances.

<div style="margin-left: 40%">

Respectfully submitted,

 /s/ Margo Pave
Michael S. Wolly
Margo Pave
ZWERDLING, PAUL, KAHN & WOLLY, P.C.
1025 Connecticut Ave. NW  Suite 712
Washington, D.C.  20036
PHONE: (202) 857-5000
FAX: (202) 223-8417
E-MAIL: mwolly@zwerdling.com
mpave@zwerdling.com


 /s/ Harold A. Ross
Harold A. Ross
Ohio Bar No.0003617
Mezzanine - Standard Building
1370 Ontario Street
Cleveland, OH 44113-1702
PHONE: (440) 734-3754
FAX: (440) 734-3754
EMAIL: Haross1@aol.com

</div>

# EXHIBIT A

Award No.  01
Case No.   01

## PUBLIC LAW BOARD NO. 7310

PARTIES)        United Transportation Union
TO)
DISPUTE)        Norfolk Southern Railway Company

**COMPANY FILE:**        **EE-RON-05-43**
*UTU File No.*        **G893**

## STATEMENT OF CLAIM:

Seniority dispute on behalf of Virginia Division Engineers K. L. Morgan, H. N. Stokes, and E. E. Hall protesting their seniority rankings on the B8 Engineer Roster associated with Roanoke East Engineer's seniority roster.

## OPINION OF BOARD:

This case involves the Carrier's placement of K. L.  Morgan, H. N. Stokes and

E. E. Hall on the Virginia Division B8 Engineer- East of Roanoke seniority roster

following their completion of Locomotive engineer training (LET). The claimants,

were first employed by the  Carrier , on June 11, 1997, July 19, 1997, and July 19,

1997 respectively, as conductors on the Virginia Division.

A January 26, 1996 Memorandum Agreement between the UTU-T and the

Carrier modified the process, which determined the order in which employees would

be selected to attend engineer training. Section 7 of the Agreement, which was

specific to the Virginia Division, defined four "zones" of selection: Shenandoah;

Roanoke: Crewe; and Norfolk. On January 2, 2005. Claimant Morgan was required to

attend engineer training class from the "Crewe Zone".  Claimants Stokes and Hall

were required to attend a subsequent engineer training class, also from the "Crewe

Zone", commencing January 31, 2005.  All three Claimants were ranked on the Virginia Division Engineer's B-8 roster, which encompasses the territories included in both the Crewe and Roanoke Zones, according to the dates they commenced LET. This placed them behind employees with less ground service seniority who had been selected from the Roanoke Zone for earlier training classes under the appropriate provisions of the aforementioned January 26, 1996 Letter of Understanding. Therefore, each filed a claim grieving their respective ranking on the engineer's seniority roster. The Carrier noted that following the filing of his seniority grievance, claimant Morgan resigned his train and engine service seniority and is therefore an improper Claimant in this matter.

The Organization stated that by ranking the claimants in this manner, the Carrier had effectively "stolen" their ground service seniority.  The Organization stated that the January 26, 1996 Letter of Understanding did not give the Carrier authority to rank the Claimants behind others of lesser ground service seniority on the Virginia Division Engineer's Seniority Rosters. In support of its position, the Organization cited the handling of engineer rankings in connection with two other Order of Selection Lists also in effect on the N&W property - the 2002 Central Hub Region Network Order of Selection List and the 2006 Pocahontas Order of Selection List. On both seniority districts, junior employees who are selected for LET training ahead of more senior employees are ranked behind the senior employees once the senior employees attend LET.

The Carrier – and the BLET who was named as a third party to the dispute –

Award No. 1
Page 3

stated that the referenced handling on the Central Hub and Pocahontas seniority districts was accomplished through Side Letter Agreements signed in conjunction with each of these order of selection lists. By Side Letter dated February 13, 2002 and strictly with respect to Central Region Hub Network employees, the ranking specified by the side letter was permitted:

> ...regarding the proper application of Article 21 (1) (c) and (g) of the Engineers Schedule Agreement. During conference it was agreed that subsequent to the date of this understanding the proper application of this provision is that employees on the Central Hub Region Hub Network upon successful completion if the Locomotive Engineer Training Program will remain in the same relative order on the engineer's seniority roster as they appear on the order of selection list......

So, too, were Pocahontas District employees afforded the same ranking in connection with the signing of the August 16, 2006 Side Letter which accompanied the establishment of a Pocahontas District Order of Selection List. A similar letter was never executed in connection with or applicable to the 1996 Virginia Division Order of Selection List. Therefore, it is the Carrier's and BLET's position that on the Virginia Division Article 21 of the BLET N&W Agreement – without modification - is controlling and the Claimant's were properly ranked on the applicable engineer's roster.

The Board finds that the instant case centers upon a unique set of facts. There is no dispute over the veracity of the facts, only their application to the instant matter. To this Board the language utilized in the February 13, 2002 Side Letter Agreement, which accompanied the February 11, 2002 establishment of an order of selection list for the Central Hub Region Network, is critical. It specifically described the "proper

Award No. 1
Page 4

application of Article 21" with respect to employee ranking on the engineers seniority roster. Identical language was utilized in a BLET Side Letter to the 2006 Pocahontas Division Order of Selection Agreement. Both of these Agreements were amendments to the January 26, 1996 Letter of Understanding, which established the order of selection list for the Virginia Division, were not stand alone agreements. Therefore, the Board finds that they merit consideration with respect to the instant dispute. After examining the contract language and the language contained in the amendments to this agreement, the Board finds that effective February 13, 2002, the ranking of employees selected for LET in accordance with an order of selection list permitted under the provisions of the 1996 Letter of Understanding, or any modifications thereto, should have been accomplished according to their relative train service seniority ranking.

Further, the on-property handling of the matters reflects that all three Claimants met the contractual time limits specified in Paragraph 5 of Article 17 of the 1980 BLET Schedule Agreement for grieving their positioning on the B-8 roster. However, this Board finds merit to the Carrier's arguments regarding Claimant Morgan's claim given his resignation of seniority. Therefore, the Board orders Claimants Stokes and Hall to be ranked on the B-8 roster according to their train service seniority. Claimant Morgan's claim is dismissed.

Award No. 1
Page 5

**Findings:**   Claim partially sustained as outlined in the opinion.

John R. Binau
Neutral Member

_____
T. V. Arnett
Carrier Member

_____
L. P. King, Jr.
Organization Member