**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN** | ) ) ) | **CASE NO.1:10CV1532** |
| **Petitioner,** | ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| vs. | ) ) | |
| **UNITED TRANSPORTATION UNION** | ) ) | **OPINION AND ORDER** |
| **Defendant** | ) ) | |
| vs. | ) ) | |
| **NORFOLK SOUTHERN RAILWAY COMPANY** | ) ) ) | |
| **Respondent** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon Defendant and Respondent's Objection to the Report and Recommended Decision of Magistrate Judge Greg White, recommending that Petitioner's Motion for Summary Judgment be granted, the arbitrator's decision vacated, and the case remanded. For the following reasons, the Report and Recommended decision is OVERRULED, Petitioner's Motion for Summary Judgment is denied, the Respondent and

1

Defendant's Motions for Summary Judgment are granted, and the arbitrator's award is reinstated.

## I. FACTS[1]

The dispute in question involves an arbitral award that determined the seniority levels of two employees of Respondent Norfolk Southern Railway Company ("NSRC" or "Employer") who had been promoted from trainmen to engineers. Specifically involved are claimants H.N. Stokes and E.E. Hall.

Petitioner Brotherhood of Locomotive Engineers and Trainmen ("BLET" or "Engineer Union") represents NSRC employees that are in the class of engineer. NSRC is a corporation that operates rail equipment and facilities. This qualifies the employer as a "carrier" as defined by the Railway Labor Act ("RLA"). Defendant United Transportation Union ("Trainmen Union") is a Union for NSRC that represents the conductors and trainmen.

The Engineer Union and the Employer are parties to various agreements governing the terms and conditions of engineers' seniority appointments. One of these agreements is the 1980 N&W BLET Schedule Agreement ("BLET Schedule Agreement"), which addresses the seniority of engineers. Article 21 of the BLET Schedule Agreement establishes when NSRC employees, who operate in **certain geographic** locations, attain seniority. Article 21 states, in relevant part, that "*promotion and the establishment of a date of seniority as engineer shall date from day of promotion* (from trainman to engineer)." This includes the Virginia Division in which Hall and Stokes belong.

---

[1] For a complete detailed version of the facts, See Magistrate Judge White's Report and Recommendation ("R&R"), which refers to the original Complaint and incorporates all documents relating to the dispute.

The Trainmen Union and the Employer are also parties to various agreements governing the terms and conditions of trainmen. One of these agreements is a 1996 Agreement that generally defined the zones from which employees of each geographic Division would be chosen for promotion to engineer. This included the Virginia Division.

On February 13, 2002, Employer and Engineer Union entered into a Side Letter Agreement ("2002 Side Letter Agreement") altering the application of Article 21's seniority provision, but only for the Central Region Hub Network. This does not include the Virginia Division. Pursuant to the 2002 Side Letter Agreement, an engineer's seniority is based upon the original date of hire as a trainman, NOT FROM THE DATE OF PROMOTION, as previously outlined in Article 21. Furthermore, on August 16, 2006, Employer and Engineer Union entered into another Side Letter Agreement ("2006 Side Letter Agreement"), altering the application of Article 21's seniority provision in the Pocohontas Division. The 2006 Side Letter Agreement also established that an engineer's seniority is based upon the original date of hire as a trainman. This also did not include the Virginia Division. In March of 2008, the Employer sought to enter into the same Side Letter Agreement for the Virginia Division, but the Engineer Union did not agree to the proposed changes to Article 21.

Two NSRC employees of the Virginia Division brought a grievance to the Trainmen Union, arguing that their seniority status should be based upon their original date of hire as trainmen. Pursuant to the RLA, the parties submitted the dispute to arbitration, otherwise referred to as an Adjustment Board. The Employer and the Trainmen Union agreed to the Adjustment Board in a 2009 Agreement with the following limitations:

> *Such arbitration board shall have jurisdiction only of the claims and grievances shown on the attached list* (lists the two Virginia

3

> members)....*arising out of the interpretation or application of **applicable agreements** between Carrier and the employees of said Carrier represented by UTU governing rates of pay, rules, or working conditions....the board shall **not** have jurisdiction, nor authority to change existing agreements or establish new rules.*

In making his decision, the arbitrator considered Article 21, the 1996 Agreement, and the 2002 and 2006 Side Letter Agreements. The arbitrator found that the two Side Letter Agreements established a protocol because they amended the 1996 Agreement. The arbitrator therefore ordered the seniority list organized based upon the original date of hire as a trainman. The Engineer Union filed a Complaint with the Northern District of Ohio, disputing the arbitration award. The Magistrate Judge reviewed the Complaint which challenged the arbitrator's decision on two separate grounds. The Engineer Union argued that the arbitrator exceeded his jurisdiction because: (1) he ignored the agreement creating the Adjustment Board which required the arbitrator to adopt the construction of Article 21; and, (2) he essentially rewrote the contract, ignoring the plain language of Article 21 and the express language of the Side Letter Agreements.

The Magistrate Judge agreed with the Engineer Union and held that the arbitrator exceeded his authority by using the two Side Letter Agreements as precedent. The Magistrate Judge determined that the two men who brought the grievance were members of the Virginia Division, and that the Union had not yet bargained for and/or signed any Side Letter Agreement for the Virginia Division. The Magistrate Judge concluded that because the union members who brought the grievance neither signed nor agreed to anything besides the 1996 Agreement, the arbitrator had created a new rule for the Virginia members that they had not bargained for. The Magistrate Judge held that the arbitrator should have relied upon the BLET Schedule Agreement,

4

and thus, vacated the arbitrator's award.

## II. LAW AND ANALYSIS

### A. Standard of Review

Civil Rule 72(b) Standard

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636, the District Court is required to review *de novo* any portion of the Magistrate Judge's Report to which a specific objection is made. A party who fails to file an objection waives the right to appeal. *U.S. v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). In *Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Supreme Court held: "[i]t does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."

Local Rule 72.3(b) recites in pertinent part:

> The District Judge to whom the case was assigned shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

### B. Limited Judicial Review of Labor-Arbitration Decisions

Congressional policy and the Federal Arbitration Act encourage resolution of labor

disputes through voluntarily agreed upon arbitration. Section 203(d) of the Labor Management Relations Act provides, "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). In order to support arbitration, Federal labor case law substantially limits the occasions for judicial review, yet requires Court intervention when arbitration would go so far outside of its powers as to discourage others from future arbitration. *Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc.*, 442 F.3d 471, 475 (6th Cir. 2006). The scenarios in which a court may vacate an arbitral award are exceedingly narrow, "...even more so than the highly deferential 'abuse of discretion' standard." *Jones v. CSX Transp.*, 2010 U.S. Dist. LEXIS 140816, *4 (S.D. Ohio July 15, 2010). The Supreme Court has even noted that "[j]udicial review of these Boards' determinations has been characterized as among the narrowest known to the law." *Atchison, T. & S. F. R. Co. v. Buell*, 480 U.S. 577, 563 (1987) (internal quotations omitted) (*citing Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 92 (1978)).

      The Sixth Circuit, as well as the Supreme Court of the United States, have consistently held that because parties bargain for the arbitrator's judgment and assume everything that goes along with that judgment, the courts should not weigh any merits of the grievance or determine whether there is particular language in the written instrument which supports the grievance. *See Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)*; and Equitable Res., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, 621 F.3d 538, 545 (6th Cir. 2010). All the Court need decide is whether an arbitrator "is even arguably construing or applying the contract and acting withing the scope

6

of his authority. The fact that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 523 U.S. 504, 509 (2001) (internal quotation marks omitted).

Moreover, the Court is further limited by the recent decision in *Michigan Family Resources, Inc. v. Service Employees Int'l Union Local 517 M*, 475 F.3d 746 (6th Cir. 2007) (*en banc*). The Court in *Michigan Family* reviewed Supreme Court case law on the Court's ability to overrule a labor-arbitration award. *Id*. at 753. There, the Sixth Circuit determined that the Court must find a "procedural aberration" in the arbitration process. *Id*. In order to find such an aberration, the Court asks three questions, only one of which is relevant to the case at hand: "...in resolving any legal or factual disputes in the case, was the arbitrator arguably construing or applying the contract?" *Id*. So long as the arbitrator does not offend this requirement, the Court must not intervene even though the arbitrator made serious, improvident or silly errors. *Id*.

## **C. Arbitrator's Interpretation of the Contractual Dispute**

As stated earlier, the Court's duty is to decide whether the arbitrator went outside of his jurisdiction by failing to arguably construe or apply the contract. *Id*. The Court in *Michigan Family* noted that an arbitrator was arguably construing the contract when he "...refers to, quotes from and analyzes the pertinent provisions of the agreement..."*Id*. at 754. In the case at hand, the arbitrator's award analyzed Article 21 of the 1980 BLET Scheduling Agreement, the 1996 Agreement, as well as the two Side Letter Agreements. The Board reasoned:

> To this Board the language utilized in the [2002 Side Letter Agreement establishing]...an order of selection list for the Central Hub Region Network is critical. It specifically described the "proper application of Article 21" with respect to employee ranking on the engineers' seniority roster. Identical language was utilized in a BLET Side Letter to the 2006

> Pocohontas Division...Both of these Agreements were amendments to the January 26, 1996 Letter of Understanding, which established the order of selection list for the Virginia Division, were not stand alone agreements. Therefore, the Board finds that they merit consideration with respect to the instant dispute. After examining the contract language and the language contained in the amendments to this agreement, the Board finds [the Side Letter Agreements] effective on the ranking of employees ...under the provisions of the 1996 Letter of Understanding, or any modifications thereto.

The Court recognizes the difficulty in deciding whether or not an arbitrator has arguably construed a contract; however, so long as it can be reasonably substantiated that the arbitrator held to the *Michigan Family* standards, the Court will find that he has. *Solvay Pharmaceuticals, Inc.*, 442 F.3d at 471 ( "[w]here the scope of arbitration is 'fairly debatable' or 'reasonably in doubt,' the arbitrator's assumption of jurisdiction should be upheld.") (citing *Butler Products Co. v. Unistrut Corp.U,* 367 F.2d 733, 736 (7th Cir.1996). Here, the arbitrator referred directly to Article 21 and analyzed its importance when he noted that the 1996 Agreement amended Article 21 and also covered the Virginia Division. The arbitrator also noted that because the 1996 Agreement was amended by two Side Letter Agreements, Article 21 (which was amended by the 1996 Agreement) had been amended in its entirety. Furthermore, the arbitrator expressly stated that he examined the contracts: "[a]fter examining the contract language and the language contained in the amendments to this agreement, the Board finds [the Side Letter Agreements] effective." *See also, Sterling China Company v. Glass, Molders, Pottery, Plastics & Allied Workers Local 24*, 357 F.3d 546, 557 (6th Cir. 2004), (holding that a supplemental award arguably construed a collective bargaining agreement where it "drew its essence" from an original award that interpreted the collective bargaining agreement).

Based on the Board's finding, both Stokes and Hall were ranked according to their dates

of hire as trainmen.

### D. Magistrate Judge's Decision to Overturn the Arbitrator

The Magistrate Judge cites *Michigan Family*'s rare exception, which states that there can be an arbitration decision that is so "ignor[ant] of the contract's 'plain language' as to make implausible any contention that the arbitrator was construing the contract." *Michigan Family*, 475 F.3d at 753. The Magistrate Judge continues by noting that an interpretation of a contract could be so untethered to the terms of the agreement...that it would cast doubt on whether the arbitrator was engaged in interpretation at all. *Id. See also, Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.*, 130 S. Ct. 1758, 1767 (2010) (noting that "when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice'...his decision may be unenforceable").

The Magistrate Judge concludes that the facts of this case meet the requirements of the exception. In his Report and Recommendation, The Magistrate Judge notes that Article 21 designates that seniority is to be based upon date of promotion. Thus, when the arbitrator's decision "seized upon language in the two Side Letter Agreements," he, in effect, rewrote the seniority provision. (R&R at 16). The Magistrate Judge supports the contention that the arbitrator created a new rule by noting that the Side Letter Agreements, upon which the arbitrator based his decision, DO NOT include the Virginia Division. The 2009 Arbitration Agreement specifies that the Board is not permitted to create any new rules.

### The Arbitrator Did Not Create a New Rule

It is the Court's opinion that the 2009 Arbitration Agreement allows for interpretation of multiple agreements, not just one singular agreement. The 2009 Arbitration Agreement states

9

that the Board will have jurisdiction of claims arising out of interpretation or application of **applicable agreements** between Carrier and its employees (paraphrased). The phrase "applicable agreements" is critical. Because the Employer and the Union agreed to allow for multiple agreements to be brought to the table in a grievance dispute, the Court finds that the parties received what they bargained for. *See Transportation-Communication Employees Union v. Union Pacific Railroad Co.*, 385 U.S. 157, 161 (1967), (noting that in order to interpret a bargaining agreement "it is necessary to consider the scope of the other related collective bargaining agreements, as well as practice, usage and custom pertaining to all such agreements") (internal citations omitted). The Magistrate Judge reasons that because the Trainmen Union did not sign any applicable Side Letter Agreement for the Virginia Division, the parties did not agree to any modification of the provisions regarding the Virginia Division. However, the Court notes that the Report and Recommendation acknowledged that Article 21 was voluntarily placed before the arbitrator as part of the process to resolve the grievance. (R&R at 12). The Magistrate Judge also acknowledged that the arbitrator was empowered to interpret the Side Letter Agreements, yet believed the arbitrator failed to recognize the agreements were limited by their geography. (R&R at 16). The Magistrate Judge found: "[t]hough the arbitrator was empowered to interpret the side letter agreements, his decision contradicts their plain language. [T]he side letter agreements do speak of the 'proper application' of Article 21, [however] they were expressly *limited* in their geographic scope." (R&R at 16).

The Court interprets the Magistrate Judge's statement as thus: the arbitrator reviewed Article 21, had the authority to interpret the Side Letter Agreements, but simply interpreted the Side Letter Agreements incorrectly. That is exactly the type of mistake that *Michigan Family*

10

permits.  The Magistrate Judge was internally inconsistent when he initially stated that the arbitrator went outside of his jurisdiction, yet followed by outlining why the arbitrator in fact did not exceed his jurisdiction: "the arbitrator was empowered to interpret the side letter agreements." (R&R at 16).  Once the Magistrate Judge concluded the arbitrator was empowered to interpret the Side Letter Agreements, any interpretation is beyond the Court's review.

Additionally, in neither NSRC nor Trainmen Union's objections to The Magistrate Judge's R&R nor in BLET's opposition to the objections to the Magistrate Judge's R&R, did there exist any argument that the Side Letter Agreements were improperly placed before the Arbitrator as part of the process in resolving the grievance.  If any party had objected to the 2002 or 2006 Side Letter Agreements being brought to the arbitrator's attention in the first place, then the Court would at least have had the authority to review whether or not the arbitrator exceeded his jurisdiction in violation of the 2009 Arbitration Agreement by creating new law.  As it stands, the District Court may only review a portion of the Magistrate Judge's Report to which a specific objection is made. Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636.  Therefore, because the 2009 Arbitration Agreement allows for the interpretation of "applicable agreements" and the Magistrate Judge does not contend that the two Side Letter Agreements were improperly before the arbitrator, there is no basis for the Court to determine that the arbitrator created new law.  Rather, the arbitrator was acting within his authority to interpret the agreements.  Regardless of whether or not the Court agrees with the Magistrate Judge that the arbitrator was incorrect in his application, the arbitrator clearly had the right to make any "serious, improvident or silly error" so long as the arbitrator was arguably interpreting applicable agreements. *Michigan Family Resources*, 475 F.3d at 753.

To compare, it is important to discuss *Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, (6th Cir. 2008). When analyzing the recent case of *Totes Isotoner*, the Sixth Circuit found that the arbitrator had no right to interpret a secondary agreement. *Id*. at 416. In *Totes Isotoner*, the Court found that the arbitrator made a "procedural aberration" in the manner expressly prohibited by *Michigan Family* by interpreting a collective bargaining agreement that neither party grieved. *Id*. The Court noted that the proper procedure is for the parties to bring a grievance to the Union and only after the Union determines the grievance is arbitral, is it possible for the arbitrator to look at the agreement. *Id*. Therefore, "when the arbitrator addressed the question of the second collective bargaining agreement, he acted outside his authority by reaching a question not presented to him by the parties." *Id*. The Court further added, "were we to uphold the arbitrator's supplemental decision...we would likely undermine the parties' freely negotiated, bargained-for procedures which require the submission of a grievance prior to determination of remedies." *Id*.

The case at bar is distinguishable from *Totes Isotoner* because here, no one has objected that the Side Letter Agreements were inappropriately brought to the Adjustment Board's attention. The only objection made was that the arbitrator incorrectly applied the additional agreements to parties outside of the geographic designations listed. In *Totes Isotoner*, the objection was that the second collective bargaining agreement was not interpretable by the arbitrator. Therefore, because no party objected to the admission of the agreements, the Court cannot review the Side Letter Agreements in the same manner that the Court did in *Totes Isotoner*.

Additionally, in *Solvay*, the arbitrator interpreted similar secondary agreements to the

12

original collective bargaining agreement as amendments and ignored the plain language of the original agreement. *Solvay Pharmaceuticals, Inc.*, 442 F.3d at 582.  In *Solvay*, the original collective bargaining agreement established both a broad arbitration clause, and an exclusive remedy/no damages provision.  The parties then entered into a supplementary agreement which outlined an extensive damages provision, but did not state any arbitration provision.  In considering the two documents, the arbitration panel determined that the exclusive remedy/no damages provision did not apply to a breach of the second agreement.  The panel awarded $68 million in damages.  The District Court upheld the award.

Upon review, the Sixth Circuit Court of Appeals noted that certainly there was a question of whether the exclusive remedy/no damages provision could be read as not applying to the second agreement; however, the Court used the *Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 600 (6th Cir. 1997) test of whether an arbitrator's award fails to draw its essence from the agreement.  This test looks at four different questions, but the most relevant was whether the award was "rationally supported by or derived from the agreement." *Id*.  The Court determined that the arbitrators might reasonably have concluded that the parties intended, through the second agreement, to amend the provisions in the first agreement.  Therefore, under the standard that "[i]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed,"  the Court held that the arbitration panel did not exceed its powers in awarding damages. *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).

Similar to the finding of the Sixth Circuit in *Solvay* that the second agreement amended the first, even though the second agreement directly contradicted the first, the Court finds that

13

the arbitrator did not exceed his authority and therefore, the arbitration award is upheld.

### III. CONCLUSION

As set forth above, the arbitrator did not exceed his authority but merely interpreted the agreements that were properly put before him.  Therefore, the Magistrate Judge's Report and Recommended decision is OVERRULED, the Petitioner's Motion for Summary Judgment is denied, the Respondent and Defendant's Motions for Summary Judgment are granted, and the arbitrator's award reinstated.

**IT IS SO ORDERED.**

**/s/ Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**